## Fruchtman Estate

*Irvin Stander*, for accountants.

*Robert A. Rosin*, for claimant.

KLEIN, ADM. J., July 29, 1969.—Harry W. Fruchtman died July 30, 1968, survived by a wife and three children and leaving a will which was admitted to probate on August 20, 1968, when letters testamentary were granted. Proof of advertisement of notice thereof was produced to the auditing judge.

The terms of decedent's will need not be recited, as the dispositive provisions contained therein are set forth in the statement of proposed distribution.

Credit is taken in the account for payment of Pennsylvania transfer inheritance tax in the amount of $2,500, less discount of $125, and the same was duly vouched. Mr. Dolfman, representing the Commonwealth of Pennsylvania, entered an appearance claiming such transfer inheritance tax as may be due and assessed, without prejudice to right of the Commonwealth to pass on debts and deductions, and the awards herein contained will accordingly be made subject thereto.

Both Harry W. Fruchtman, the testator, and Fannie, his wife, had been married before and had children from their previous marriages. They married on May 19, 1963. On May 16, 1963, three days before their marriage, the parties entered into an antenuptial agreement, in which they set forth their respective

assets and waived their rights in and to each other's estates. The agreement states, inter alia:

"WHEREAS, it is the intention of the intended wife to waive, relinquish and bar all her intestate and other rights and interests, either as the wife or widow of the first party, in and to any property now owned or hereafter acquired by the first party; . . ."

The agreement provided further:

"Fannie Roseman covenants and agrees that in consideration of said marriage and the agreement contained in the foregoing paragraph, [providing for the use of the family residence until her death or re-marriage] the same shall be in lieu of any and all her rights in and to the real and personal property of Harry W. Fruchtman, now owned or hereafter ac-quired, including any and all inchoate intestate rights, and rights as heir of any kind. She hereby releases un-to Harry W. Fruchtman, his heirs, personal represent-atives and assigns forever all her interest, rights and claims in and to said property of every kind and nature."

On December 5, 1968, Fannie Fruchtman, the widow, filed a petition claiming the family exemption of $1,000 pursuant to section 211 of the Fiduciaries Act of 1949. An answer was filed by the executors in which they contend that the widow waived and re-leased her right to the exemption in the antenuptial agreement.

It is conceded that the widow was a member of the decedent's household at the time of his death. She died May 17, 1969, subsequent to filing the petition for the family exemption but prior to the hearing. Although the right to the exemption is a personal one, and may not be claimed by the personal representa-tive of the claimant after her death (see Matheny Estate, 164 Pa. Superior Ct. 18 (1949), and the other

cases cited in 3 Hunter 2d Ed. p. 23), where the widow makes demand for the exemption in her lifetime, as was done in this case, her subsequent death does not affect the right to the exemption. See Finney's Appeal, 113 Pa. 11 (1886); Daggett's Estate, 7 Pa. C. C. 338 (1889); Styers' Estate, 42 Pa. C. C. 623 (1914).

Mr. Rosin, counsel for the widow's personal representative, concedes that the antenuptial agreement was fair and was not procured by fraud or overreaching. He contends, however, that the widow did not waive her right to the family exemption under the provisions of the agreement.

The family exemption is not an estate which passes to the widow by will or under the intestate laws. It is an inchoate right of the widow in her husband's estate which becomes complete only when she claims the exemption and it is allowed by the court: Stokes Estate, 167 Pa. Superior Ct. 128 (1950). See also Hildebrand's Estate, 262 Pa. 112 (1918); Murray Estate, 158 Pa. Superior Ct. 504 (1946).

When a woman, about to marry, enters into an antenuptial contract in which she relinquishes all her rights in her husband's estate, in the absence of concealment, fraud or imposition, this includes the widow's exemption, although not specifically mentioned: Haendler's Estate, 81 Pa. Superior Ct. 168 (1923). See also Tiernan v. Binns, 92 Pa. 248 (1879); Ludwig's Appeal, 101 Pa. 535 (1882); Speidel's Appeal, 107 Pa. 18 (1884).

Each case in which the husband and wife have entered into an antenuptial agreement or a postnuptial agreement, is sui generis. The rights of the survivor depend upon the language of the agreement.

We must, therefore, examine the provisions of the antenuptial agreement in the instant case to ascertain whether the widow waived her right to the family

exemption. The agreement clearly states that it is the wife's intention "to waive, relinquish and bar all of her intestate and other rights and interests, either as the wife or widow [of the decedent] in and to any property now owned or hereafter acquired" by him. Moreover, she expressly agreed that the benefits conferred upon her in the agreement were to be in lieu of any and all her rights in and to the real and personal property of decedent, then owned by him or acquired thereafter including "any and all inchoate intestate rights, and rights as heir of any kind." She further released unto decedent, his heirs, personal representatives and assigns forever "all her interest, rights and claims in and to said property of every kind and nature."

It would be difficult to find more specific language to effectively establish that the widow had released all of her rights, including the right to the family exemption, in the estate of her deceased husband.

Counsel for the claimant relies primarily upon Hughes Estate, 41 D. & C. 2d 601, 17 Fiduc. Rep. 114 (1966) which we think is inapposite. In that case, the parties executed a postnuptial agreement in which they expressly waived their rights as husband and wife "to elect to take against the will of the other or to enter into any proceeding against the estate of the other contrary to the expressed provisions of their respective Wills." Judge MacElree, in a carefully considered adjudication, said:

". . . it must be borne in mind that the family exemption is not an inheritance, but rather a gratuity prompted by a consideration of public policy and that the exemption creates an independent bounty for the widow, it is neither a legacy or a devise, nor an inheritance and that by asserting it, the amount of it ceases to be a part of the decedent's estate as to decedent's creditors, legatees, devisees, or distributees."

He, therefore, properly concluded that what the wife had agreed to was, in effect, an election to take under the will of decedent, and by so doing did not waive her right to the statutory family exemption.

Landis Estate, 18 Fiduc. Rep. 442 (1962), cited by the claimant is also readily distinguished, because in that case the agreement limited its provisions to the real and personal property owned by the parties on the date of its execution.

In our opinion, the instant case is more like Jackson Estate, 33 D. & C. 2d 402, 14 Fiduc. Rep. 391 (1964), in which the nuptial agreement provided that the wife "will waive all claims and demands of every character and description which she may, might, could or shall in anywise acquire by reason of said marriage . . . in and to any and all property, real, personal or mixed, of which the husband is now or may hereafter during the marriage become seized or possessed in his own right . . ." Judge Taxis held that this language was sufficient to effect a waiver of the widow's right to the family exemption.

We, therefore, conclude that Fannie Fruchtman, the widow, waived and released her right to the family exemption. Accordingly, the claim of her personal representative thereto is denied.

All parties in interest are stated to have received notice of the audit. . . .

And now, July 29, 1969, the account is confirmed nisi.